**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STATE OF WEST VIRGINIA** *ex rel.* | : | |
| **DARRELL V. MCGRAW, Jr.,** | : | |
| **Attorney General,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | **NO. 09-4671** |
| **v.** | : | |
| | : | |
| **COMCAST CORP., et al.,** | : | |
| | : | |
| **Defendants.** | : | |

March _31__, 2010                                                                 Anita B. Brody, J.

## MEMORANDUM

## TABLE OF CONTENTS

I. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A. Subject Matter Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B. CAFA's Jurisdictional Requirements Are Met . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        1. Minimal Diversity Requirement Satisfied . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            a. State Interest Should Be Examined on a Claim-by-Claim Basis rather than a Wholesale Basis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                i. CAFA's Purpose Is to Expand Federal Jurisdiction over Class Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                ii. *Caldwell* Framework Is Consistent with CAFA's Goals . . . . 13

            b. Comcast's Premium Subscribers in West Virginia Are Real Parties in Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

c. Statutory *Parens Patriae* Authority Does Not Provide Real-Party-in-Interest Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

2. Numerosity Requirement Satisfied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

3. "Class Action" Exists as Defined under CAFA . . . . . . . . . . . . . . . . . . . . . 19

C. Sovereign Immunity Is Not Violated when a State Acts as Plaintiff . . . . . . . . . . . . 23

IV. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## I. INTRODUCTION

Plaintiff, the State of West Virginia ("West Virginia"), acting through its Attorney General, Darrell V. McGraw, Jr., filed this antitrust and consumer protection suit as a *parens patriae* action in the Circuit Court of Marshall County, West Virginia. Defendants, Comcast Corporation, Comcast Holdings Corporation, Comcast Cable Communications, LLC, and Comcast Cable Communications Holdings, Inc. (collectively "Comcast"), removed the case to the U.S. District Court for the Northern District of West Virginia. Comcast contends that there are three bases for removal: (1) the suit is a "class action" under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(1), and therefore removable under CAFA's removal provision, § 1453(b); (2) the suit is a "mass action" under CAFA, § 1332(d)(11), and therefore removable under § 1453(b); and (3) the suit is removable under §§ 1441 & 1446 on traditional diversity grounds, § 1332(a). West Virginia filed a Motion to Remand and the parties filed supplementary briefs in support of their respective positions. In addition, I heard oral argument on the remand motion. I conclude that this matter is removable as a class action under CAFA and therefore, the Motion to Remand is denied.[1]

## II. BACKGROUND

Comcast is a major provider of cable television services in the United States, servicing millions of customers nationwide, including numerous residents of West Virginia. Comcast provides cable services in exchange for a monthly fee based upon the level of service provided. Customers who seek "premium" services, including high definition television, digital cable,

---

[1] Because class action diversity jurisdiction under CAFA exists, I need not determine whether the requirements of traditional diversity jurisdiction or mass action diversity jurisdiction under CAFA are also satisfied.

digital On-Demand, digital video recorder, and premium movie channels, pay higher monthly fees than those who request "basic" or "standard" cable television services.[2] Comcast's premium subscribers pay a monthly rental fee for a set-top cable box consisting of a converter box and cable descrambler. The cable box enables premium subscribers to view premium content and use premium services. Comcast estimates that it serves approximately 89,000 premium subscribers in West Virginia who utilize more than 132,000 set-top cable boxes.

The Complaint alleges that cable boxes with equivalent capabilities exist in the open market and that Comcast's purported requirement that premium subscribers rent the boxes only from Comcast constitutes impermissible tying behavior in violation of the West Virginia Antitrust Act ("WVAA"), W. Va. Code §§ 47-18-1, *et seq.*, the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code §§ 46A-6-101, *et seq.*, and the common law of West Virginia. West Virginia seeks treble damages under the WVAA, damages under the WVCCPA, restitution, disgorgement, civil penalties under both the WVAA and the WVCCPA, an injunction against the alleged improper tying, and attorneys' fees and litigation expenses.

The U.S. Judicial Panel on Multidistrict Litigation ("MDL Panel") has consolidated 23 cases under my jurisdiction: 22 putative class actions, including one that was originally filed in the U.S. District Court for the Southern District of West Virginia, and this matter. The putative class actions all involve damage claims based on Comcast's alleged tying of premium cable services to the rental of set-top cable boxes. The MDL Panel conditionally transferred this action to my jurisdiction while West Virginia's remand motion lay pending before Judge Frederick P.

---

[2] For the sake of brevity, I shall refer to those West Virginians who subscribe to Comcast's premium cable services simply as "premium subscribers."

Stamp, Jr., of the U.S. District Court for the Northern District of West Virginia. The State

initially opposed the transfer but later agreed to withdraw its opposition, allowing the MDL Panel

to finalize the transfer. In the interim, Judge Stamp and I agreed that I would decide the issue.

Now that the transfer has been finalized, the Motion to Remand is before me.

## III. DISCUSSION

### A. Subject Matter Jurisdiction

This suit has been brought by the State of West Virginia alone, in its capacity as *parens

patriae*. (Compl. ¶2.) Comcast removed the case from state court under CAFA and on tradi-

tional diversity grounds. The issue before me is whether removal was proper.

A federal court has jurisdiction over a civil case initiated in state court and removed by

the defendant to federal district court if the case originally could have been brought in federal

court. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 134 (2005). The original jurisdiction of

federal district courts includes actions involving federal questions, 28 U.S.C. § 1331,[3] and those

in which the diversity of citizenship requirements of 28 U.S.C. § 1332 are met. Diversity

jurisdiction under CAFA exists if CAFA's requirements for class action suits are met. Those

requirements are that:

- the amount in controversy must exceed $5,000,000 in the aggregate, 28
  U.S.C. §§ 1332(d)(2) & (6);

- at least one class member must be a citizen of a different state than any
  defendant, § 1332(d)(2)(A), known as CAFA's minimal diversity require-
  ment;

- there must be at least 100 members in the putative class, § 1332(d)(5)(B),

_____

[3] No federal jurisdiction exists here; therefore, Comcast's removal of this action was only
proper if diversity jurisdiction exists.

5

known as CAFA's numerosity requirement; and

- the action must be "filed under rule 23 of the Federal Rules of Civil Procedure or [a] similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).[4]

The parties do not dispute that the amount in controversy in this matter exceeds $5,000,000. (*See* Oral Arg. Tr. 33:9-15, Dec. 23, 2009.) Thus, the remaining requirements under CAFA are: (1) CAFA's minimal diversity requirement; (2) CAFA's numerosity requirement; and (3) CAFA's requirement that a class action exist under the parameters of 28 U.S.C. § 1332(d)(1)(B). In the following three sections, I will examine whether each of the remaining requirements are met. Ultimately, I conclude that all of CAFA's requirements for class action suits are satisfied here, and therefore, this is a class action over which I have jurisdiction.

### B. CAFA's Jurisdictional Requirements Are Met

#### 1. Minimal Diversity Requirement Satisfied

For CAFA's minimal diversity requirements to be met, "only one member of the plaintiff class–named or unnamed–must be diverse from any one defendant." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1193 n.24 (11th Cir. 2007). Minimal diversity cannot exist where the only plaintiff in an action is a state because, for the purposes of diversity, a state has no citizenship.

---

[4] Even if the basic diversity requirements of CAFA are met, courts are still required to decline jurisdiction if either of the following two exceptions under § 1332(d)(4) apply: "Subsection (A), the 'local controversy' exception, may apply when at least one significant defendant and more than two-thirds of the members of the putative classes are local. Subsection (B), the 'home-state' exception, may apply when the primary defendants and at least two-thirds of the members of the putative classes are local." *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 149 (3d Cir. 2009). Neither exception applies in this case because none of the defendants are "local," which, for the purposes of CAFA, means being a citizen of West Virginia, "the state in which the action was originally filed." *Id*. at 149 n.4.

"[A] suit between a state . . . and a citizen of another state is not a suit between citizens of different states." *Harris v. Penn. Turnpike Comm'n*, 410 F.2d 1332, 1333 n.1 (3d Cir. 1969). While the general rule is that diversity jurisdiction cannot exist where a state is the only plaintiff, an exception surfaces when examining the "essential nature and effect of the proceeding" reveals that the state should not be considered the only plaintiff. *Ramada Inns, Inc. v. Rosemount Mem'l Park Ass'n*, 598 F.2d 1303, 1306 (3d Cir. 1979) (internal quotation marks omitted); *see also Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 424 (5th Cir. 2008) [hereinafter *Caldwell*] ("It is well-established that in determining whether there is jurisdiction, federal courts look to the substance of the action and not only at the labels that the parties may attach."). In such a case, other parties, called "real parties in interest," should also be considered plaintiffs for jurisdictional purposes because they are "directly and personally concerned in the outcome of the litigation." *Id*. at 428 (internal quotation marks omitted).

Thus, the initial step towards resolving the minimal diversity question is to examine if West Virginia, the only plaintiff named in this action, is also the only real party in interest. *See Ramada Inns*, 598 F.2d at 1306 (when a state is a party to an action and that "particular case involves a question of diversity jurisdiction, the initial inquiry is [always] the same: is the state the real party in interest to the litigation?"). If it is, minimal diversity cannot exist in this matter.

To determine whether a state bringing a *parens patriae* suit is the only real party in interest on the plaintiff's side of the action, it is useful to ascertain whether the state has common law authority to bring the case as a *parens patriae* action. A state cannot bring a *parens patriae* suit under the common law without being a real party in interest. *See Allegheny Gen. Hosp. v. Phillip Morris, Inc.*, 228 F.3d 429, 436-37 (3d Cir. 2000) ("A [*parens patriae*] suit, by definition,

involves the government as the real party in interest.").  In other words, if a state brings a viable *parens patriae* action under the common law, that state must be a real party in interest.  There-fore, to determine who are the real parties in interest in this case, brought as a *parens patriae* action, it is informative to examine the Supreme Court's discussion of common law *parens patriae* authority in *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982) [hereinafter *Snapp*].

*Snapp* explains that in order for a state to prove that it has authority under the common law to bring a *parens patriae* action, it "must articulate an interest apart from the interests of particular private parties, *i.e.*, the State must be more than a nominal party."  *Id*. at 607.  To be more than a nominal party, a state must "express a quasi-sovereign interest."  *Id*.  *Snapp* identifies two main categories of quasi-sovereign interests: "[f]irst, a State has a quasi-sovereign interest in the health and well-being–both physical and economic–of its residents in general.  Second, a State has a quasi-sovereign interest in not being discriminatorily denied its rightful status within the federal system."  *Id*.  In this case, only the first category is relevant.  The *Snapp* Court recognized that it might be difficult for lower courts to distinguish when a state is protect-ing its "residents in general" as opposed to a discrete group of citizens.  "[I]n determining whether the State has alleged injury to a sufficiently substantial segment of its population," lower courts should consider the indirect effects of the alleged injury as well as the direct effects on an identifiable group of individuals.  *Id*. (refusing to "draw any definitive limits on the proportion of the population of the State that must be adversely affected by the challenged behavior").

In sum, if a state can demonstrate that, in bringing an action, it seeks only to protect the well-being of its residents in general, it has expressed a quasi-sovereign interest in the entire

action.  If it has expressed such a comprehensive quasi-sovereign interest, it has authority under the common law *parens patriae* doctrine to pursue the relief it seeks, and therefore is the sole real party in interest in the suit.  If the state is the sole real party in interest in an action, minimal diversity cannot exist.  Thus, the next step in the minimal diversity inquiry is to determine whether West Virginia is seeking only to protect its general citizenry or is also seeking relief on behalf of private individuals.

a. State Interest Should Be Examined on a Claim-by-Claim Basis rather than a Wholesale Basis

To determine whether a state such as West Virginia is seeking relief for its general citizenry or private individuals, a court must examine the State's claims.  There are two ways to undertake such an inquiry:  either on a claim-by-claim basis, or as a single inquiry that encompasses all the claims (what I shall term as the "wholesale approach").  I conclude that the claim-by-claim approach adopted by the only appellate court to address a contextually similar matter–the Fifth Circuit in *Caldwell*–is most consistent with Congress's intent under CAFA to expand federal jurisdiction over class actions.  Using the *Caldwell* framework, I find that Comcast's premium subscribers are the real parties interest at least for West Virginia's treble damages claim and that statutory differences between *Caldwell* and this case do not distinguish them.

In many *parens patriae* cases, states not only seek treble damages, but also injunctive relief and civil penalties.  *See, e.g.*, *Illinois v. SDS West Corp.*, 640 F. Supp. 2d 1047, 1050-52 (C.D. Ill. 2009) (collecting cases).  Courts have universally accepted the notion that a state is the real party in interest when it brings a claim for injunctive relief because such a remedy protects

both current and prospective consumers and does not raise the same individual due process concerns as does a claim for treble damages. *See, e.g.*, *Caldwell*, 536 F.3d at 430. It is also well accepted that a state is the real party in interest when it brings a claim for civil penalties because such awards add only to the state's coffers rather than any individual's bank account. *See, e.g.*, *Connecticut v. Levi Strauss & Co.*, 471 F. Supp. 363, 372 (D. Conn. 1979).

However, when courts examine a state's interest in treble damages and compensatory damages claims, they are split over whether to frame the relief the state seeks at a wholesale level or on a claim-by-claim basis. Courts that have adopted the claim-by-claim approach in pre-CAFA and non-CAFA *parens patriae* cases have found that treble and compensatory damages primarily benefit private individuals, which means that the state has no quasi-sovereign interest for such claims. *See Hood v. F. Hoffman-La Roche, Ltd.*, 639 F. Supp. 2d 25, 33 (D.D.C. 2009) [hereinafter *Hoffman-La Roche*]; and *Levi Strauss & Co.*, 471 F. Supp. at 371. On the other hand, courts that have adopted the wholesale approach in pre-CAFA and non-CAFA *parens patriae* cases have found that states can have a comprehensive quasi-sovereign interest in a matter even when they seek treble and compensatory damages, as long as the state is also seeking broader relief such as an injunction or civil penalties. *See SDS West Corp.*, 640 F. Supp. 2d at 1052; *Wisconsin v. Abbott Labs*, 341 F. Supp. 2d 1057, 1062-63 (W.D. Wis. 2004); and *New York ex rel. Abrams v. Gen. Motors Corp.*, 547 F. Supp. 703, 705-06 (S.D.N.Y. 1982).

Thus, the analytical framework in which a court examines a state's claims for relief has a powerful impact on the court's ultimate conclusion as to whether a state has a quasi-sovereign interest in all the relief it seeks. I conclude that the claim-by-claim framework is most appropriate in this case because: (1) CAFA was intended to expand federal jurisdiction over class

actions, which suggests that courts should carefully examine actions removed under CAFA to ensure that legitimate removal requests are not thwarted by jurisdictional gamesmanship, and (2) the Fifth Circuit's use of the claim-by-claim framework in *Caldwell* is consistent with such a careful approach.

### i. CAFA's Purpose Is to Expand Federal Jurisdiction over Class Actions

It is undeniable that Congress intended for CAFA "to expand substantially federal court jurisdiction over class actions." S. Rep. No. 109-14, at 43 (2005);[5] *see also Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 148-49 (3d Cir. 2009) (discussing the expansion of federal court jurisdiction over class actions), *Bell v. Hershey Co.*, 557 F.3d 953, 957 (8th Cir. 2009) (same), *Estate of Pew v. Cardarelli*, 527 F.3d 25, 33 (2d Cir. 2008) (Pooler, J., dissenting) (same), *Palisades Collections, LLC v. Shorts*, 552 F.3d 327, 336 (4th Cir. 2008) (same), *In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 705 (5th Cir. 2008) (same), and *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1193 (11th Cir. 2007) (same). CAFA was enacted because Congress was concerned that class actions were too often precluded from federal court by unnecessary procedural requirements. Inadequate access to federal courts had led to: (a) the inconsistent application of "governing rules [for class actions] . . . frequently in a manner that contravene[d] basic fairness and due process considerations," and (b) "inadequate supervision over litigation procedures and proposed settlements." S. Rep. No. 109-14, at 4. In addition,

---

[5] CAFA's legislative history is extremely limited. It was first passed in the Senate without amendments, and the House adopted the bill without amendments. Consequently, there is no House or Conference Report to examine. *See In re U-Haul Int'l, Inc.*, No. 08-7122, 2009 WL 902414, at *2 n.2 (D.C. Cir. Apr. 6, 2009) (Rogers, J., dissenting). Only the Senate Judiciary Committee's Report on CAFA remains as the primary non-textual indicator of congressional intent towards the legislation.

Congress was frustrated with an environment it perceived as allowing "lawyers to 'game' the procedural rules and keep nationwide or multi-state class actions in state courts." *Id*. Consequently, CAFA was drafted in such a way as to "strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications."[6] *Id*. at 35.

CAFA's enactment engendered "a sea change in diversity jurisdiction." *Alabama Power Co.*, 483 F.3d at 1193. For certain class actions, CAFA eliminated the complete diversity requirement and replaced it with the lesser minimal diversity requirement. *Id*. In addition, "[b]efore CAFA, the claims of a class of plaintiffs were not permitted to be aggregated for purposes of satisfying the jurisdictional amount requirement of 28 U.S.C. § 1332(a). . . . CAFA replace[d] this 'non-aggregation' principle with an amount in controversy requirement that explicitly permits aggregation of claims." *Id*. at 1194 n.24.

With these two significant changes in place, federal courts have jurisdiction over more class action suits than they did prior to CAFA's enactment, which was Congress's intent. Because of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them," *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817

---

[6] West Virginia argues that the clarity of the Senate Report is marred by statements made by Senators involved in the debate over a failed amendment to CAFA that was introduced in an attempt to exempt class actions filed by state attorneys general from removal under CAFA. *But see Caldwell*, 536 F.3d at 424 (bolstering its decision to decline to remand a *parens patriae* action that had been removed as a "mass action" under CAFA by citing the amendment's failure). Neither the failure of the amendment nor the conflicting and contradictory debate statements made by key Senators provide a solid framework upon which it is safe to rely. Instead, they explain why "[e]ven the most ardent academic defenders of the use of legislative history in statutory interpretation are quick to disavow cherry-picking from floor speeches." *Szehinskyj v. Att'y Gen.*, 432 F.3d 253, 256 n.2 (3d Cir. 2005). I will not attempt to unravel the debate over the failed amendment; instead, I will proceed under the Senate Report's charge that the definition of a class action be "interpreted liberally." S. Rep. No. 109-14, at 35.

(1976), a federal court must rigorously examine a matter removed under CAFA to ensure that it does not prematurely preclude a class action (in all but name) from the court's jurisdiction. The claim-by-claim approach does a better job of unearthing a state's real interest in a suit because, unlike the wholesale approach, it does not blur the lines between those claims for which a state has a well-recognized interest, and those claims for which a state's interest is negligible. The claim-by-claim approach prevents a state from wearing two hats in an attempt to disguise itself as the real party in interest for claims for which the true real parties in interest are individual consumers. *But cf. Abbott Labs*, 341 F. Supp. 2d at 1062 (approving of a wholesale approach that allows a state to "wear[] two hats by requesting relief for itself and for private parties"). Because CAFA dictates that a federal court rigorously scrutinize a matter initiated in state court to determine if it is removable as a class action, adopting a claim-by-claim approach is most consistent with Congress's intentions.

*ii.* Caldwell *Framework Is Consistent with CAFA's Goals*

The Fifth Circuit's decision in *Caldwell* confirms that a claim-by-claim approach is the most appropriate analytical framework. *Caldwell* involved an antitrust action brought by Louisiana's Attorney General in state court against various insurance companies that allegedly conspired to suppress competition in the insurance industry by rigging the value of policyholder claims. The state, in its role as *parens patriae*, sought forfeiture of illegal profits, treble damages, and injunctive relief. The defendants removed the case and the state filed a motion to remand. After piercing the pleadings and concluding that the state was only a nominal party, the district court denied the motion to remand.

On appeal, the Fifth Circuit determined who were the real parties in interest in the case.

13

The court did not pause to discuss which analytical framework to choose. It simply noted that CAFA was enacted to "prevent 'jurisdictional gamesmanship,'" *id*. at 424, and chose the claim-by-claim approach in order to unearth disguised real parties in interest. Ultimately, the *Caldwell* court affirmed the district court's conclusion that Louisiana's consumers were the real parties in interest for the treble damages claim.

*Caldwell* instructs a court to ferret out hidden plaintiffs to see if elements of CAFA are met. West Virginia was unable to identify any other appellate court decision that contradicts the Fifth Circuit's approach in the context of a removal action under CAFA. Because the Fifth Circuit's approach is consistent with Congress's intent in enacting CAFA, I adopt a claim-by-claim approach and reject West Virginia's suggestion that I examine the State's interest in this case as a whole.

### b. Comcast's Premium Subscribers in West Virginia Are Real Parties in Interest

Having concluded that it is most appropriate to examine the quasi-sovereign interest question on a claim-by-claim basis, the next step is to decide if West Virginia has a quasi-sovereign interest in bringing its treble damages claim. Just as in *Caldwell*, it is apparent that the State does not. In *Caldwell*, the Fifth Circuit noted that the complaint was "rife with statements that ma[de] clear that [the aggrieved consumers were] the real parties in interest" at least with respect to the claim for treble damages. *Id*. at 429 n.9 (citing examples); *see also Hoffman-La Roche*, 639 F. Supp. 2d at 32 (noting that Mississippi asserted that it sought to recover damages suffered by individual vitamin purchasers). The Fifth Circuit found that such statements made "clear that [the state was] seeking to recover damages suffered by *individual policyholders*," which rendered the state's argument that it had a quasi-sovereign interest in such damages

14

unconvincing. *Caldwell*, 536 F.3d at 429. West Virginia's complaint is equally damning. It

seeks:

- "an Order finding that West Virginia consumers of premium cable services have incurred damages in an amount equal to the increased cost paid for cable services resulting from Comcast's Antitrust Act violations" (Compl., Prayer for Relief ¶2);

- "an Order finding that West Virginia consumers have incurred damages in an amount equal to the increased cost paid for cable services resulting from Comcast's Consumer Credit and Protection Act violations" (*Id*. at ¶6); and

- "judgment against Comcast in favor of West Virginia consumers for restitution and/or excess charge damages in an amount equal to the increased cost paid for cable services resulting from Comcast's Consumer Credit and Protection Act violations." (*Id*. at ¶7.)

For these claims in particular, West Virginia is not seeking relief for its residents in general but

for a discrete group of Comcast's premium subscribers. Therefore, for these claims, especially

the treble damages claim, the state has no quasi-sovereign interest.

As the *Caldwell* court explained, "the purpose of antitrust treble damages provisions are

to encourage private lawsuits by aggrieved individuals for injuries to their businesses or prop-

erty." 536 F.3d at 430 (citing *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 262 (1971)). Indeed,

many private lawsuits have been filed on behalf of Comcast's allegedly aggrieved premium cable

subscribers, on the ground that they have been paying higher prices for their set-top boxes than

would otherwise exist in the absence of antitrust malfeasance. Twenty-two such cases have been

consolidated under my jurisdiction by the MDL panel, including one private action being pursued

on behalf of Comcast's premium subscribers in West Virginia. The abundance of these actions

suggests that the State's inherent *parens patriae* prerogative to "prevent[] . . . injury to those who

cannot protect themselves," *id*. at 425 (quoting *Snapp*, 458 U.S. at 600), is not implicated by the pursuit of treble and compensatory damages.[7]

Because West Virginia has no quasi-sovereign interest in its treble damages claim, it has no common law *parens patriae* authority to bring such a claim. Instead, as the Fifth Circuit found in *Caldwell*, the true real parties in interest for a treble damages claim are the allegedly injured consumers–i.e., Comcast's premium subscribers in West Virginia. Given that all of those customers are diverse in citizenship from the defendants, none of whom is considered a citizen of West Virginia for jurisdictional purposes, CAFA's minimal diversity requirement is met.

### c. Statutory *Parens Patriae* Authority Does Not Provide Real-Party-in-Interest Status

The only arguably material difference between this case and *Caldwell* is that West Virginia, unlike Louisiana, enacted a state analog to the Hart-Scott-Rodino Antitrust Improvements Act of 1976 ("Hart-Scott-Rodino"), 15 U.S.C. § 15c-h. Congress passed Hart-Scott-Rodino in order to create "a statutory *parens patriae* action for state attorneys general" seeking damages on behalf of consumers injured by the violation of federal antitrust laws. *Caldwell*, 536 F.3d at 427 n.5. In the wake of Hart-Scott-Rodino, many states enacted statutory analogs of the federal legislation to "provide their attorneys general with authority to file similar *parens patriae* antitrust actions under state law." *Id*. In *Snapp*, a post-Hart-Scott-Rodino case, the Supreme Court noted that "[o]ne helpful indication in determining whether an alleged injury to the health and welfare of its citizens suffices to give the State standing to sue as *parens patriae* is whether

---

[7] West Virginia agrees that this case mirrors the other 22 putative class actions. *See* Oral Arg. Tr. 27:11-12 (Statement of Ms. Toriseva, counsel for the State) ("[H]ypothetically if there is Federal Court jurisdiction, this case clearly belongs within the MDL.").

the injury is one that the State, if it could, would likely attempt to address through its sovereign lawmaking powers." 458 U.S. at 607. The Fifth Circuit noted in *Caldwell* that it had never addressed whether a state Hart-Scott-Rodino statute could shield a representative action from removal under CAFA, and declined to do so because Louisiana had not enacted its own state version of Hart-Scott-Rodino. *Caldwell*, 536 F.3d at 427 n.5. West Virginia has enacted such a law; it is enshrined in the WVAA, W. Va. Code § 47-18-17, which means that I must wade into the territory that the *Caldwell* court avoided.

Although the Fifth Circuit had no need to address the issue, the remainder of its analysis provides the key to demonstrating that a state analog to Hart-Scott-Rodino cannot shield a representative action from removal under CAFA. That key is the distinction between a standing analysis and a real-party-in-interest analysis. The *parens patriae* doctrine is a concept of standing whereas the real-party-in-interest analysis is not. *Hoffman-La Roche*, 639 F. Supp. 2d at 32 n.9. A state may acquire *parens patriae* standing (i.e., the right to bring an action) either through a grant of statutory authority or by meeting the requirements of the common law. *Caldwell*, 536 F.3d at 427 n.5. The standing and real-party-in-interest analyses are only coextensive under the common law. The reason this is so can be explained by examining the Fourth Circuit's decision in *Pennsylvania v. Mid-Atlantic Toyota Distribs.*, 704 F.2d 125 (4th Cir. 1983) [hereinafter *Mid-Atlantic Toyota*].

*Mid-Atlantic Toyota* was a post-Hart-Scott-Rodino *parens patriae* case that involved allegations of federal antitrust violations. The primary issue facing the court was whether the state-plaintiffs had standing to seek treble damages on behalf of allegedly aggrieved consumers. The Fourth Circuit noted that under the common law understanding of *parens patriae* authority,

17

states had no "legitimate quasi-sovereign interest in seeing that consumers or any other group of persons receive a given sum of money." *Id.* at 129 n.8 (internal quotation marks omitted). Consequently, with regard to their treble damages claims, the state-plaintiffs in *Mid-Atlantic Toyota* were considered only nominal parties, not real parties in interest. Therefore, the court determined that the state-plaintiffs did not have standing under the common law *parens patriae* doctrine. However, because Hart-Scott-Rodino created a statutory *parens patriae* right of action broader than the common law right, the Fourth Circuit determined that the state-plaintiffs had standing to bring their treble damages claims in federal court even though they were not the real parties in interest for those claims.[8] *Id*. at 129-30.

The conclusion that courts have drawn from *Mid-Atlantic Toyota* is that while real party in interest status is coextensive with common law *parens patriae* authority, a statute may provide a broader right of action than the common law. In that situation, a state could have statutory *parens patriae* authority to bring an action without having common law *parens patriae* authority to bring the action (i.e., without being a real party in interest). *See Caldwell*, 536 F.3d at 429; *see also Hoffman-La Roche*, 639 F. Supp. 2d at 32 n.9 ("The fact that an attorney general has the authority to proceed as *parens patriae* does not, *ipso facto*, mean that he or she necessarily is the only real party in interest."). Thus, even if the WVAA provides the State Attorney General with a broader source of standing than the common law to bring a *parens patriae* action in state court, that has no impact on my real-party-in-interest analysis regarding the treble damages claim. Consequently, West Virginia's enactment of its own version of Hart-Scott-Rodino does not

---

[8] Jurisdiction was not at issue in *Mid-Atlantic Toyota* because federal law (i.e., Hart-Scott-Rodino) created the cause of action. 704 F.2d at 127.

sufficiently distinguish this case from *Caldwell* and has no bearing on my ultimate conclusion that Comcast's premium cable subscribers in West Virginia are the real parties in interest with respect to the treble damages claim.

### 2. Numerosity Requirement Satisfied

Comcast acknowledges that it has tens of thousands of premium cable subscribers in West Virginia. Because I have concluded that those consumers are the real parties in interest for some of the claims in this action, CAFA's numerosity requirement–that there must be at least 100 members of the putative class–has been met.

### 3. "Class Action" Exists as Defined under CAFA

Finally, I conclude that the remaining jurisdictional requirement under CAFA–that a matter satisfy CAFA's definition of a class action–is met. Under CAFA, a class action is defined as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). West Virginia contends that unlike Rule 23 of the West Virginia Rules of Civil Procedure (i.e., the State's procedural provision for class actions), the WVAA is not a state statute or rule of judicial authority similar to federal Rule 23 and that, as a result, this matter cannot be considered a class action. The State is incorrect.

While it is true that the WVAA does not match federal Rule 23 perfectly, CAFA does not require such exactitude. The Senate Judiciary Committee Report notes that the definition of a class action should be "interpreted liberally." S. Rep. No. 109-14, at 35. The Report states:

> [CAFA's] application should not be confined solely to lawsuits that are labeled "class actions" by the named plaintiff or the state rulemaking authority. Generally speaking, *lawsuits that resemble a purported class action should be considered a*

> *class action* for the purpose of applying these provisions.

*Id*. (emphasis added). This language is straightforward. It calls upon federal district court judges to look beyond the face of a complaint when determining whether federal jurisdiction exists over a matter that appears to be a class action in all but name.

The WVAA, with its procedural protections for consumers represented by the State, is sufficiently similar to federal Rule 23 to meet CAFA's requirement for class actions. The primary objective of a class action suit, aside from enhancing judicial economy and protecting defendants from inconsistent obligations, has always been to protect the interest of "absentees," i.e., unnamed class members.[9] *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 402-03 (1980). It is well-recognized that the interests of absent parties must be carefully protected because, despite the fact that they are most often peripheral to the proceedings, the court's judgment may bind them as equally as it binds the named class members. *See In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 784 (3d Cir. 1995) ("Despite the potential benefits of class actions, there remains an overarching concern–that absentees' interests are being resolved and quite possibly bound by the operation of res judicata even though most of the plaintiffs are not the real parties to the suit.").

Courts have long grappled with the due process concerns inherent in the application of res judicata to absent parties in class suits. *See, e.g.*, *Lusardi v. Lechner*, 855 F.2d 1062, 1070 (3d Cir. 1988) ("One problem bedeviling the common law of class actions in this country in 1938

---

[9] "The status of unnamed members of an uncertified class . . . have been described by th[e] Court as 'parties in interest,' as 'interested parties,' or as 'absent parties.'" *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 343 n.3 (1980) (Stevens, J., concurring) (internal citations omitted). I will refer to them as absent parties.

was the binding effect of the class action decree on absent class members.").  It was not until

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), that the Supreme Court established the

minimal requirements necessary to relieve due process concerns related to the binding effect of a

court's judgment on absent class members in a money damages suit:

> The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel.  The notice must be the best practicable, "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  The notice should describe the action and the plaintiffs' rights in it.  Additionally, we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court.  Finally, the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members.

*Id*. at 812 (internal citations omitted).

In summary, the three baseline requirements necessary to protect the interests of absent

class members are 1) notice, 2) an opt-out opportunity, and 3) adequate representation.  Federal

Rule 23 and West Virginia's state analog, W. Va. R. Civ. P. 23, codify these requirements.  *See*

Fed. R. Civ. P. 23(c)(2) and 23(e)(1) (notice); Rule 23(c)(2)(B)(v), 23(c)(3)(A), and 23(e)(2)

(opt-out); and Rule 23(a)(4) (adequate representation).[10]  Similarly, the WVAA, W. Va. Code

§ 47-18-17, contains these same protections.  The statute assumes that the state attorney general

is an adequate representative, and requires the following additional absentee protections:

> (b) In any action brought under this section, the attorney general shall . . . cause *notice* to be given by publication.  If the court finds that notice given solely by publication would deny due process of law to any person or persons, the court may direct further notice to such person or persons according to the circumstances of the case.

---

[10] W. Va. R. Civ. P. 23 has nearly identical subsections.

(c) Any person on whose behalf an action is brought under this section *may elect to exclude* from adjudication the portion of the state claim for monetary relief attributable to him by filing notice of such election with the court.

(d) The final judgment in an action under this section *shall be res judicata* as to any claim under this article by any person on behalf of whom such action was brought and who fails to give such notice within the period specified in the notice given pursuant to subsection (c).

(e) An action . . . shall not be dismissed or compromised without approval of the court, and *notice* of any proposed dismissal or compromise shall be given.

*Id*. (emphasis added).

It is of particular import that under the WVAA any aggrieved consumers who fail to opt-out of this matter would be bound by a judgment in favor of West Virginia. That distinguishes this case from, for example, a pre-CAFA suit such as *New York ex rel. Abrams v. Gen. Motors Corp.*, in which the court felt comfortable assuming that the state was the only real party in interest in the action because only "the State . . . [was] bound by the results of this action." 547 F. Supp. at 707. The WVAA's procedural protections also distinguish this case from *Missouri ex rel. Koster v. Portfolio Recovery Assocs., Inc.*, No. 4:09-CV-1641 CAS, 2010 WL 675153, at *5 (E.D. Mo. Feb. 24, 2010), a recent district court opinion that found fault with the *Caldwell* majority's analysis. The court in *Portfolio Recovery Assocs*. concluded that the state statute at issue in that case, the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §401.100, was not sufficiently similar to federal Rule 23, and therefore the matter was not removable as a class action under CAFA. An examination of §401.100 of the MMPA reveals that the statute does not grant the Missouri Attorney General ("AG") the right to obtain treble damages; it merely grants the Missouri AG the right to obtain restitution for injured Missourians and distribute recovered monies to them. In addition, the MMPA does not discuss the potential

binding effect of such an action, nor does it provide injured consumers with notice or an opportunity to opt-out. See §401.100.4-5. The WVAA, in contrast, does include language that can bind West Virginians to judgments in actions brought on their behalf by the West Virginia AG, and the statute also contains notice and opt-out provisions that reflect a deep concern for the due process rights of aggrieved West Virginia consumers. Therefore, the WVAA is sufficiently similar to federal Rule 23 to satisfy CAFA's class action definition.

Because this is (1) a civil action, (2) in which the amount in controversy exceeds the sum or value of $5,000,000, and (3) is a class action (4) involving a plaintiff class exceeding 100 persons in which (5) members of the class of plaintiffs are citizens of a state, West Virginia, different from any defendant, none of whom are considered citizens of West Virginia, CAFA's jurisdictional requirements are met and this Court has jurisdiction over this matter.

### C. Sovereign Immunity Is Not Violated when a State Acts as Plaintiff

As a final issue, West Virginia argues that to allow the removal of this action would violate the State's right to sovereign immunity under the Eleventh Amendment and the State's right to enforce its police power under the Tenth Amendment. West Virginia contends that it is unconstitutional to coerce a state to appear against its will in the federal courts in the absence of clear congressional approval. The bulk of the case law regarding this issue weighs against West Virginia. *But cf. In re Katrina Canal Litig. Breaches*, 524 F.3d at 711 (raising a constitutional question as to "whether a state as a plaintiff suing defendants over whom it has regulatory authority in state court under its own *state laws* may be removed to federal court on diversity grounds under CAFA, rather than federal question jurisdiction").

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not

be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. West Virginia admits that it is well-settled that, in the removal context, the Eleventh Amendment is not implicated when a state is the plaintiff as is the case here. *See, e.g.*, *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 118-20 (2d Cir. 2007) (noting that a long line of Supreme Court cases, from *Ames v. Kansas*, 111 U.S. 449, 470 (1884), to *Illinois v. City of Milwaukee*, 406 U.S. 91, 101 (1972), have held that defendants may remove cases to federal court in which a state is the plaintiff).

West Virginia contends that this matter is distinguishable because removal would, in effect, restrain the government from enforcing its police powers. *See California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 845 (9th Cir. 2004) (examining and ultimately refuting the state's argument that "involuntary removal is the constitutional equivalent of bringing or commencing a suit against it"). The State cites *Thomas v. FAG Bearing Corp.*, 50 F.3d 502, 505 (8th Cir. 1995), in support of this proposition. *FAG Bearing Corp.* is inapposite to this matter. The Eighth Circuit in that case analyzed whether the Eleventh Amendment prohibits the coercive joinder of a state; it did not address the Eleventh Amendment in the removal context. The court concluded that a state's sovereign immunity is violated when it is involuntarily joined to a matter because coercive joinder forces a state to prosecute an action "at a time and place dictated by the federal courts." *Id.* at 505.

Unlike *FAG Bearing Corp.*, where the state had not yet brought a case against any of the parties involved, West Virginia is the party that commenced this action. In a matter more similar to the present case than *FAG Bearing Corp.*, the Second Circuit explained that "[t]he removal of

24

the case[] . . . was the result of the voluntary act[] of [the State] in commencing the lawsuit[] against the defendants. Once having done so, [the State] subjected [itself] to all of the rules and consequences attendant to that decision." *In re MTBE Prods. Liab. Litig.*, 488 F.3d at 119; *see also Dynegy, Inc.*, 375 F.3d at 848 n.14. Because West Virginia initiated this action, its Eleventh Amendment concerns are unfounded.[11]

Finally, West Virginia argues that allowing the removal of this matter under CAFA violates the State's Tenth Amendment right to prescribe regulations within its borders. This argument is part and parcel of its Eleventh Amendment sovereign immunity argument. The Tenth Amendment states that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. "The Constitution assigns to Congress the power to define the jurisdiction of the lower courts. This power derives from Congress's power in Article I '[t]o constitute Tribunals inferior to the Supreme Court,' U.S. Const., art. I, § 8, and in Article III to 'ordain and establish' inferior courts." *Owens v. Republic of Sudan*, 531 F.3d 884, 888 (D.C. Cir. 2008). Congress may exercise its power to define the lower courts' jurisdiction through its legislative authority as long as it does so within the boundaries fixed by the Constitution. *Id*. West Virginia

---

[11] The State admitted as much in oral argument:

Mr. Burke (defense counsel): Your Honor, I think the cases are clear that the Eleventh Amendment only applies in cases where the state is the defendant, and that it's crystal clear that there is no Eleventh Amendment issue here.

The Court: Do you agree with that?

Ms. Toriseva (counsel for the State): I do.

Oral Arg. Tr. 35:4-9.

fails to identify in what way Congress abused its constitutionally-delegated powers under Article 1, § 8, to define the jurisdiction of the lower courts in its enactment of CAFA.[12]  In the absence of any case law to support West Virginia's position, and in light of Congress's authority to define the jurisdiction of the lower courts, I find that the State's contention lacks merit.

## IV. CONCLUSION

For the foregoing reasons, West Virginia's Motion to Remand is denied.  I recognize, however, that in two separate decisions the Fifth Circuit has recommended that district courts consider severing those claims that are removable under CAFA (i.e., the request for treble damages) from those claims for which the State is undoubtedly the real party in interest (i.e., the request for injunctive relief and civil penalties).  *See Caldwell*, 536 F.3d at 430 & n.11; *In re Katrina Canal Litig. Breaches*, 524 F.3d at 711-12.  Although I have supplemental jurisdiction over the latter, I am willing to entertain requests for the remand of the injunctive relief and civil penalties claims.  After due consideration of any such request, I will rule on the severance issue.


_____s/Anita B. Brody_____


_____

ANITA B. BRODY, J.

---

[12] Neither of the cases cited by West Virginia supports its position:  *Dep't of Revenue v. ACF Indus.*, 510 U.S. 332 (1994), does not discuss the Tenth Amendment; and *Commonwealth v. Perkins*, 21 A.2d 45 (Pa. 1941), *aff'd* 314 U.S. 586 (1942), concluded that no violation of the Tenth Amendment had occurred.